IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

CAROLE CRANE,

          Plaintiff,

      v.

UNITED STATES OF AMERICA,

          Defendant.

Civ. No.: 3:10-cv-00068-AC

FINDINGS AND RECOMMENDATION

ACOSTA, Magistrate Judge:

*Introduction*

Carole Crane ("Crane") previously filed an action alleging the United States Marshals Service ("USMS") deputies failed to provide adequate assistance as she exited a transport van, fully shackled, leading directly to significant injuries and ongoing pain and suffering. That action resulted in summary judgment for the United States. *Crane v. United States*, No. 3:10-68-AC, 2011 WL 7277317 (D. Or. Nov. 29, 2011), *report and recommendation adopted*, 3:10-CV-68-AC, 2012 WL 442748 (D. Or. Feb. 9, 2012). This court granted Crane leave to amend to include a failure to warn

Page 1 - FINDINGS AND RECOMMENDATION

negligence claim. 2011 WL 7277317, at *11. In adopting the Findings and Recommendation, Judge Mosman also granted Crane leave to amend to include failure to watch and undue haste negligence theories. *Crane*, 2012 WL 442748, at *1. Subsequently, Crane filed a Second Amended Complaint alleging three negligence claims against the USMS: (1) failure to warn, (2) failure to watch, and (3) acting with undue haste.[1] Crane maintains the two Deputy United States Marshals providing the transport had a duty to prevent injury, and by failing to warn Crane of the dangers involved with exiting the van, failing to watch Crane as she stepped down, and acting with undue haste in unloading Crane from the van, the marshals negligently breached that duty. (Compl. ¶¶ 14-15.) Crane seeks non-economic damages in the amount of $60,000 for her physical injury, pain, and suffering allegedly resulting from the marshals' negligence.

Presently before the court is the United States's second Motion for Summary Judgment seeking an entry of judgment on all claims. The United States argues all three of Crane's negligence claims should be disallowed because the court already determined the failure to provide adequate assistance claim was barred by the discretionary function exception. Specifically, the United States contends Crane premises all her claims on her initial negligence theory and, additionally, alleges Crane cannot establish the necessary elements for her negligence claims. Crane opposes the United States's Summary Judgment Motion by arguing there are disputed issues of fact for a jury to decide on each of her three negligence claims. For the reasons set forth below, the United States's Motion for Summary Judgment should be denied.

---

[1] The Second Amended Complaint also contains the original failure to provide adequate assistance claim. Crane acknowledges the court previously granted summary judgment on the United States's claim. Crane only reasserts it in order to preserve it for appeal. (Pl.'s Resp. to Summ. J. 3, n1.)

*Factual Background*

At the time of the events under consideration, Crane was an inmate at the Columbia County Jail in St. Helens, Oregon. (Second Am. Compl. ("Compl.") ¶ 4.) Crane was in the custody of the USMS, in the course of an ordinary transport between the court and the jail, when she fell from the transport van upon exiting and suffered multiple injuries. (Compl. at ¶¶ 6, 11, 17.)

Crane contends upon arrival at the sally port of the Columbia County Jail, one of the USMS deputies transporting her instructed her to exit the van. (Compl. ¶ 7.) As Crane stepped out of the van, fully shackled in a waist chain and leg restraints, she fell forward and landed face first on the concrete floor. (Compl. ¶ 11.) Crane alleges, and the United States admits in part, she suffered lacerations, abrasions, bruises, a broken tooth, and a concussion. (Compl. ¶ 17; Answer ¶ 17.) Crane provided a security video taken at the sally port to identify the actors involved and to show the events that occurred, except for interactions that may have taken place in the van before the deputies exited. (Carole Crane First Declaration ("Crane First Decl.") Ex. 1, Aug. 20, 2010.)

The van that transported Crane was equipped with an internal step and an external step platform to facilitate prisoner entry and exit. (Karrie Lewis First Declaration ("Lewis First Decl.") ¶ 8, July 28, 2010.) The internal step was positioned at 5.5 inches below the floor of the prisoner compartment, the external step was 7.5 inches below the internal step, and the external step was about 15 inches above the ground. *Id.* Crane asserts the shackles prevented her from stepping the full distance from the van to the ground. (Crane First Decl. ¶ 12.)

During the incident, Deputy Byerly, the "cover" deputy, was positioned approximately ten feet from the van. (Luis Byerly Second Declaration ("Byerly Second Decl.") ¶ 4; Sept. 8, 2010.) Deputy Lewis was positioned at the side of the sliding van door where Crane exited. (Lewis First Decl. ¶ 3.) Deputy Lewis's December 4, 2008, field report, written the day after the incident, states:

Page 3 - FINDINGS AND RECOMMENDATION

"Crane's leg iron chain got stuck in the stepping platform, causing her to fall to the ground in a prone position." (Benjamin Haile First Declaration ("Haile First Decl."), Ex. 1, Aug. 30, 2010.) After Crane's fall, both deputies immediately came to her assistance and were subsequently joined by jail staff and the prison nurse, who provided first aid. *Id.*

*Legal Standard*

Summary judgment under Rule 56 is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts that show a genuine issue for trial. *Id.* at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will be the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Szajer v. City of Los Angeles*, 632 F.3d 607, 610 (9th Cir. 2011). All reasonable doubt as to the existence of a genuine dispute of material fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981).

*Discussion*

I. <u>Negligence</u>

The court has jurisdiction in this case under 28 U.S.C. § 1346(b), pursuant to the Federal Tort Claims Act, as Crane has sued the United States for negligence. The United States is liable for "the negligent or wrongful act or omission of any employee . . . acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The United States does not contest the marshals were acting within the scope of their employment. Courts assessing liability of the United States in a FTCA action must apply the law of the state where the alleged tort occurred. *Oberson v. USDA*, 514 F.3d 989, 999 (9th Cir. 2008). This court, therefore, applies Oregon law in evaluating the United States's motion.

To support a negligence claim, a plaintiff must establish the following elements: "(1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent." *Solberg v. Johnson,* 306 Or. 484 (1988) (citing *Fazzolari v. Portland School Dist. No. 1J,* 303 Or. 1, 17 (1987)). *See also Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n,* 298 F.3d 768, 777 (9th Cir. 2002) (applying the Oregon negligence elements to determine defendant was not liable to victim in negligence).

In *Fazzolari*, Oregon's leading case on negligence, the court introduced a general "foreseeability" formula to determine whether the case should be sent to a jury, which replaced

traditional concepts of duty, breach, and causation in analyzing Oregon negligence claims. *Waldner v. Stephens*, 345 Or. 526, 535 n.9 (2008). The *Fazzolari* court explained:

> [U]nless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether the conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff.

*Fazzolari*, 303 Or. at 17. A defendant is therefore liable only for the foreseeable consequences of his or her negligence. *Wallach v. Allstate Ins. Co.*, 344 Or. 314, 319 (2008) (citing *Fazzolari*, 303 Or. at 17). In another of the "*Fazzolari* trilogy" cases, the Oregon Supreme Court said:

> The existence and magnitude of the risk . . . bear on the foreseeability of harm. The feasibility and cost of avoiding the risk bear on the reasonableness of defendant's conduct. Both clearly are empirical questions. We do not mean that they must in every case be submitted to a jury; in an extreme case a court can decide that no reasonable factfinder could find the risk foreseeable or defendant's conduct to have fallen below acceptable standards.

*Donaca v. Curry County*, 303 Or. 30, 38-39 (1987). "Foreseeability does not refer to predictability of the specific events leading to plaintiff's injuries but, rather, the generalized risk of injury caused by defendant's act or failure to act." *Cunningham v. Happy Palace, Inc.*, 157 Or. App. 334, 338, n.2 (1998).

### A. First Claim for Relief: Failure to Warn

Crane asserts the deputies failed to warn her of the height of the van step and the dangers involved with the van exit. The United States relies on *Buchler v. State By and Through Oregon Corrections Div.*, 316 Or. 499 (1993), in which the Oregon Supreme Court affirmed the dismissal of a failure to warn claim. In *Buchler*, a prisoner escaped from custody, stole a gun, and shot two people, killing one of them. *Id.* at 502. The court initially assessed whether a special relationship existed between plaintiffs and defendant due to "a status, a relationship, or a particular conduct that

Page 6 - FINDINGS AND RECOMMENDATION

creates, defines, or limits the defendant's duty." *Id.* at 504 (citing *Fazzolari*, 303 Or. at 19). After determining no special relationship existed between the public and the prison, the court went on to assess foreseeability, finding, "[d]efendant had no duty to warn in the absence of [knowledge of the specific danger the prisoner posed to plaintiffs] because it was not reasonably foreseeable that the escapee posed a risk of harm to persons in plaintiffs' position." *Id.* at 516. In *Buchler*, the court adopted the common-law rule delineated by Section 319 of the Restatement (Second) of Torts (1965) regarding a custodian's duty to a prisoner in modern times with regard to protection of the public. 316 Or. at 506. However, the relationship between the public and the prison guards is not at issue in the case presently before the court, and therefore is not dispositive here.

A failure to warn negligence claim begins by a determination of the appropriate analytical approach:

> Failure to warn or protect should be analyzed in terms of foreseeability and unreasonable conduct. If a specific affirmative duty is imposed by statute, status or relationship, an analysis based on that specific duty is also appropriate. As noted in *Fazzolari*, the difference between a traditional duty analysis and a foreseeability analysis may be only semantic. In "duty" terms, a defendant may be found to have a duty to warn another of an undue risk of harm to a protected interest of the other if the defendant knows of the risk. If the defendant has a specific duty to the plaintiff, the defendant may also be liable without knowledge of the risk; that depends on the terms of the particular duty. Absent an affirmative duty, the existence of a "duty" in the given circumstances is a conclusion to be reached, not a means of analysis.

*Fuhrer v. Gearhart-By-The-Sea, Inc.*, 306 Or. 434, 438 (1988) (internal citations omitted). In *Fuhrer*, plaintiff's decedent died while trying to rescue children caught in hazardous conditions of the surf in the beach next to defendant's hotel. *Id.* at 436-37. Both plaintiff's decedent and the children he tried to rescue were guests of the hotel. *Id.* The court held defendant hotel was not liable for failure to warn since there were no allegations it knew or should have known of the

Page 7 - FINDINGS AND RECOMMENDATION

dangerous surf. *Id.* at 441. Without knowledge, the hotel could not have foreseen an unreasonable risk of harm, an essential element necessary to recovery on a failure to warn claim. *Id.* at 442.

    1.    Special Relationship

To evaluate a failure to warn theory, the court must first consider whether Oregon law recognizes a special relationship between USMS and Crane. The United States argues there was no special relationship between the USMS deputies and Crane, and Crane's broad assertion in her Complaint that "USMS had a duty to prevent injury," (Compl. ¶ 14), is unfounded and lacking authority. Conversely, Crane argues the USMS deputies had a duty to provide for Crane's health and safety by virtue of having full control and custody of her, yet she does not cite to any authority. "[W]hen a special relationship or status gives rise to the duty of care, that relationship or status *may* also define the scope of the duty by specifically describing the types of harms or class of persons that it encompasses . . . where the special relationship does not prescribe the scope of the duty, common law principles of reasonable care and foreseeability of harm are relevant." *Allstate Ins. Co. v. Tenant Screening Servs. Inc.,* 140 Or. App. 41, 50 (1996) (emphasis in original) (internal citation and quotation omitted); *see also Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP,* 336 Or. 329, 342 (2004).

The Second Restatement of Torts Section 314A(4) states, "One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other." Restatement (Second) of Torts § 314A (1965). This provision of the Restatement is particularly applicable here. There is no dispute the USMS had actual physical control over Crane. She was shackled, arms and legs. The marshals intentionally restricted Crane's movements and, consequently, it was difficult for her to walk, and Crane had little or no use of her arms and hands. Although Oregon has not

Page 8 - FINDINGS AND RECOMMENDATION

specifically adopted this provision, the Restatements "provide useful guidance regarding the duty imposed as the result of a special relationship or status." *Stewart v. Kids Inc. of Dallas, OR*, 245 Or. App. 267, 278 (2011) (internal citation omitted). The Oregon Supreme Court and Oregon Court of Appeals have consistently turned to the Restatements for providing guidance, in particular when addressing whether a special relationship exists in tort, and this court will do so here. *See id.* (stating same, and observing "[w]e see no reason to depart from that practice here").

Other courts have interpreted this particular section to apply to the relationship between custodians and prisoners, as well. *See Semmelroth v. American Airlines*, 448 F. Supp. 730, 733 (D. Ill. 1978). Furthermore, other states and districts in this Circuit have held jailors owe a duty of care to prisoners. *See, e.g., Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1125 n.12 (D. Nev. 2009) (under Nevada law, government officials at a minimum have a "duty to exercise reasonable care to avoid foreseeable harm" to inmates); *Gregoire v. City of Oak Harbor*, 170 Wash. 2d 628, 635 (2010) ("Washington courts have long recognized a jailor's special relationship with inmates, particularly the duty to ensure health, welfare, and safety. . . . The duty owed is a positive duty arising out of the special relationship that results when a custodian has complete control over a prisoner deprived of liberty." (internal citations omitted)).

In summary, the court concludes Oregon law imposes a special relationship which here required the USMS deputies to care for the prisoners in their custody and generally protect them from harm. "[A]s was the case in *Oregon Steel Mills,* the special relationship between the defendant and the plaintiff may establish the *existence* of a duty of care on the part of defendant, but 'the *scope* of that particular duty in that particular relationship turns out to be limited to harms to plaintiff that were reasonably foreseeable.'" *Stewart*, 245 Or. App. at 275 (quoting *Oregon Steel Mills, Inc.,* 336

Page 9 - FINDINGS AND RECOMMENDATION

Or. at 341) (emphasis in original). The court, therefore, proceeds with a general foreseeability analysis here.

    2.    <u>Foreseeability</u>

In assessing the foreseeability element of a failure to warn claim, a court looks to the risk of harm as determined by whether defendant exposed plaintiff to a known danger. *Fuhrer,* 306 Or. at 438. The United States invokes *Fuhrer* to suggest it did not know, nor should it have known, about a dangerous condition requiring a warning, and therefore, is entitled to summary judgment. It suggests that neither USMS deputy had experienced a prisoner fall from the van at issue (Byerly Second Decl. ¶ 7; Karrie Lewis Second Declaration ("Lewis Second Decl.") ¶ 4, Sept. 8, 2010), nor had either deputy a reason to think Crane was particularly vulnerable or required physical assistance. (Byerly First Decl. ¶ 8; Lewis First Decl. ¶ 7.) Therefore, the United States asserts, Crane fails to establish a foreseeable risk of harm.

In *Fuhrer*, plaintiff did not allege defendant hotel knew of the danger. Here, the Complaint alleges the deputies knew Crane was "particularly vulnerable to falling" as she was shackled and unable to freely move her arms or legs. (Compl. ¶ 12.) A factual dispute exists regarding whether a reasonable USMS deputy would or should be aware of the risk of injury or knew or should know the steps in exiting the van could be dangerous. Notwithstanding the lack of falling incidents over the five years preceding Crane's fall, the lack of railing, the varying height of the steps, and Crane being fully restrained could lead a reasonable factfinder to determine the risk of injury from falling when attempting to step down from the van, without warning, to be a known danger and, therefore, foreseeable. If foreseeable, not warning Crane about the risk of falling, or giving her instructions for safely stepping down, could be found unreasonable in light of that risk, and potentially, a cause

Page 10 - FINDINGS AND RECOMMENDATION

of Crane's injuries. As issues of fact exist regarding whether Crane's fall was foreseeable and whether USMS's failure to warn was unreasonable, summary judgment on this claim is denied.

    B.    *Second Claim for Relief: Failure to Watch*[2]

Crane next asserts the USMS deputies failed to watch her as she exited the van. The United States first argues Crane bases her failure to watch claim on her already disposed of physical assistance theory and, therefore, this claim should fail as a matter of law. The United States also asserts the security video negates Crane's version of events. Finally, it challenges Crane's ability to establish both that the United States "caused a foreseeable risk of harm" and the United States's conduct was unreasonable. Crane argues the video clearly shows one deputy was not watching and is not demonstrative regarding the other. Therefore, Crane contends, the video creates a genuine dispute of material fact to support the denial of summary judgment.

First, Crane's failure to watch theory is a discrete claim from the failure to assist theory previously asserted. In his review of this court's prior Findings and Recommendations, Judge Mosman specifically allowed Crane to amend her previous Complaint and allege this new theory of liability. *See Crane,* 2012 WL 442748 at *1. Although Crane's deposition testimony does, at times, blend the two claims, she is not precluded from delineating the claims further in opposition to the government's Motion for Summary Judgment.

Second, the video creates a viable question of fact whether the deputies were watching. Although Deputy Lewis was facing Crane during the fall, the video recording does not show

---

[2] Although the United States argues Crane cannot assert her failure to watch claim against Deputy Byerly since she had previously only suggested that Deputy Lewis did not watch her van exit, the court is not persuaded. Crane's Second Amended Complaint references generically "the deputy" or "USMS." (Complaint ¶¶ 10, 15.) Had the United States wished to assert this argument, it should have submitted a Motion for a More Definite Statement before filing its answer. *See* FED. R. CIV. P. 12(e).

Page 11 - FINDINGS AND RECOMMENDATION

whether Deputy Lewis was actually watching Crane's attempted van exit. Deputy Lewis's sworn declaration that she was watching (Lewis Second Decl. ¶ 3), is not dispositive where other evidence calls her recollection into question. The recording also shows Deputy Byerly walking away from the van when the fall occurred. In considering a summary judgment claim raising factual issues, the court must view facts in the light depicted by the videotape. *See Scott v. Harris*, 550 U.S. 372, 378 (2007). Viewing the facts in "the light most favorable to the party opposing the summary judgment motion," Crane's version of the facts surrounding Deputy Lewis's failing to watch her van exit gives rise to an issue of fact to be decided by a jury. *Id.* For this additional reason, the court cannot grant summary judgment on this claim.

Third, regarding the negligence elements the United States believes Crane cannot establish, "[a] dispute in a negligence action about whether an injury was foreseeable generally presents an issue of fact and, therefore, is not a likely candidate for summary judgment." *Cunningham*, 157 Or. App. at 337. The foreseeability of risk and the reasonableness of defendant's conduct under Oregon law generally are issues for the factfinder. *Pickens v. U.S.*, 750 F. Supp. 2d 1243, 1252 (D. Or. 2010) (citing *Donaca*, 303 Or. at 38). The court cannot conclude "no reasonable factfinder could find the risk foreseeable," and, thus, these inquiries are appropriate to leave for a jury. Accordingly, summary judgment on the failure to watch claim should be denied.

   C. *Third Claim for Relief: Acting with Undue Haste*

Lastly, Crane asserts the USMS deputies acted with undue haste in unloading her from the van. The United States argues it is entitled to summary judgment on Crane's undue haste claim first because Crane again bases her argument largely on her physical assistance theory. Second, it argues Crane's deposition testimony relied on in her undue haste claim is contradicted by the video. Third,

it again asserts Crane cannot establish the United States "caused a foreseeable risk of harm" to her nor can Crane establish its conduct was unreasonable.

For the same reasons the court rejected the United States's first and third arguments on the summary judgment motion for Crane's failure to watch theory above, the court again rejects both arguments on the United States's summary judgment motion for Crane's undue haste theory. Regarding the second argument, although Crane's deposition testimony regarding the timing of the USMS deputies' weapon stowing is contradicted by the video, an issue of fact still exists whether the deputies unloaded Crane with undue haste before Deputy Byerly was even in his appropriate "cover" position. As Crane has adequately brought forth an issue of material fact on her third theory of negligence, summary judgment likewise should be denied on this claim.

*Conclusion*

Based on the foregoing, the United States's Motion for Summary Judgment (Dkt. No. #81) should be denied.

*Scheduling Order*

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due **April 4, 2013**. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 21st day of March 2013

John V. Acosta
United States Magistrate Judge

Page 13 - FINDINGS AND RECOMMENDATION